UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WOOD, ET AL                             CIVIL ACTION


VERSUS                                  NO.  06-2570


STATE FARM FIRE AND CASUALTY            SECTION "R"(1)
COMPANY, ET AL


This Document applies to the following civil actions in the
Eastern District of Louisiana: 06-2570, 06-2994, 06-2997.


<u>**ORDER AND REASONS**</u>

Before the Court are motions to remand the above-listed

cases, which were transferred to this section because plaintiffs

claim damages pursuant to Louisiana's Valued Policy Law, La. Rev.

Stat. § 22:695.  Because these motions concern similar questions

of law, the Court has consolidated its ruling in these matters

for the sake of efficiency.  For the following reasons, the Court

GRANTS the motions.


**I.    BACKGROUND**

Plaintiffs in these cases are Louisiana property owners who

suffered substantial damage to their property during Hurricane

Katrina.  Defendants are insurance companies that lack

citizenship or a principal place of business in Louisiana and, in
one case, an insurance agency with its domicile and principal
place of business in Louisiana.  Plaintiffs filed their actions
in Louisiana state court, and defendants removed them to this
Court.  Plaintiffs now seek to remand these matters to state
court.  All defendants oppose the motions to remand and assert
that federal jurisdiction is proper under 28 U.S.C. §§ 1369(a)
and 1441(e)(1)(b), otherwise known as the Multiparty, Multiforum
Trial and Jurisdiction Act of 2002.  One defendant contends that
the Court has diversity jurisdiction over the matter under 28
U.S.C. § 1332 because of improper joinder of one of the parties.
Finally, some plaintiffs move under 28 U.S.C. § 1447(c) for an
award of attorney's fees and costs.  The Court addresses each
case separately.

## II.  LEGAL STANDARD – REMOVAL

A defendant may generally remove a civil action filed in
state court if the federal court has original jurisdiction over
the action.  *See* 28 U.S.C. § 1441(a).  The removing party bears
the burden of showing that federal jurisdiction exists.  *See*
*Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).
In assessing whether removal was appropriate, the Court is guided
by the principle, grounded in notions of comity and the

recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL 419901, at *2 (E.D. La. 1995).  The Court must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).

### B.  Applying Louisiana Law

When jurisdiction is based on diversity, Louisiana law applies to the substantive issues before the Court.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In Louisiana, the sources of law are legislation and custom.  *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004).  These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id.* (*quoting* La. Civ. Code art. 1*).  In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."  *Id.* (*quoting Prytania Park Hotel, Ltd. v. General Star Indem. Co.,* 179 F.3d

3

169, 174 (5th Cir. 1999)).  To make an 'Erie guess' on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.  *Id.* (*quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

## III. THE CASES

### A.   06-2570: Wood v. State Farm
### 06-2997: Hodges v. State Farm

Plaintiffs Jess and Margaret Wood and George and Tess Hodges sued their insurer State Farm for damages they allegedly sustained to their property during Hurricane Katrina.  The Woods allege that they were tendered only $58,832.80 under their policy's dwelling coverage when instead they were owed the full value of their dwelling coverage, $99,200.  The Woods now seek the remainder of their dwellings coverage, $40,387.20.  The Hodges allege that they were tendered only $21,433.98 under policy's dwelling coverage when instead they were owed the full value of their dwelling coverage, $56,700.  The Hodges now seek the remainder of their dwellings coverage, $35,265.02.  Both sets of plaintiffs base their claims on Louisiana's Valued Policy Law,

La. Rev. Stat. § 22:695.[1]

Plaintiffs originally filed suit in state court.  State Farm removed these case to this Court, asserting that removal is proper under the Multiparty, Multiforum Trial and Jurisdiction Act of 2002 because there exists minimal diversity and because Hurricane Katrina constitutes an accident as contemplated by 28 U.S.C. § 1369(a), therefore conferring original subject matter jurisdiction over these actions.  Alternatively, State Farm contends that removal is proper under 28 U.S.C. § 1441(e)(1)(b) because State Farm is a party to several cases that were brought or could have been brought directly into federal court under § 1369(a).  As an initial matter, minimal diversity does exist in these cases for purposes of § 1369.  The plaintiffs are citizens of Louisiana and State Farm is a citizen of Illinois.  However,

---

[1] As an initial matter, the Hodges assert that State Farm's removal was procedurally defective because State Farm filed its notice of removal nearly six months after being served with process on plaintiffs' state court pleadings.  Under 28 U.S.C. § 1446(b), a notice of removal must be filed within 30 days of the defendant's receipt of a copy of the initial pleadings.  Here, State Farm was served with process on December 16, 2005, but did not file its notice of removal until June 9, 2006.  However, 28 U.S.C. § 1441(e)(1) permits removal at a later date with leave of the district court when the defendant is a party to an action under § 1369 in a federal district court that arises from the same accident as the action in state court.  Because State Farm asserts that it is party to an action under § 1369 in this district that arises from the same accident, the Court will grant leave to consider State Farm's notice of removal under the MMTJA.

because this Court finds that Hurricane Katrina is not an
"accident" as defined by the MMTJA, removal of these cases is not
proper under § 1369(a).

Section 1369(a) states:

> The district courts shall have original jurisdiction
> of any civil action involving minimal diversity
> between adverse parties that arises from a single
> accident, where at least 75 natural persons have died
> in the accident at a discrete location, if-
> (1) a defendant resides in a State and a substantial
> part of the accident took place in another State or
> other location, regardless of whether that defendant
> is also a resident of the State where a substantial
> part of the accident took place;
> (2) any two defendants reside in different States,
> regardless of whether such defendants are also
> residents of the same State or States; or
> (3) substantial parts of the accident took place in
> different States.

28 U.S.C. § 1369(a).  The MMTJA defines the term "accident" as "a
sudden accident, or a natural event culminating in an accident,
that results in death at a discrete location by at least 75
natural persons."  28 U.S.C. § 1369(c)(4).  Section 1441(e)(1)
permits a state court defendant to remove an action to federal
court if:

> (A) the action could have been brought in a United
> States district court under section 1369 of this
> title; or
> (B) the defendant is a party to an action which is or
> could have been brought, in whole or in part, under
> section 1369 in a United States district court and
> arises from the same accident as the action in State
> court, even if the action to be removed could not
> have been brought in a district court as an original

matter.

28 U.S.C. § 1441(e)(1)(A),(B).  Thus, § 1441(e)(1)(B) provides for removal in situations in which original federal subject matter jurisdiction does not exist.  *Wallace*, 444 F.3d at 702. "When the requirements of § 1441(e)(1)(B) are met, defendants need not establish the existence of independent subject matter jurisdiction under any other provision, including under § 1369(a), because supplemental jurisdiction has been established." *Id.*  Because the ultimate goal of the MMTJA was consolidation, the MMTJA is designed to ameliorate the restrictions on the exercise of federal jurisdiction that ultimately forced parties in multiple suits arising from the same disaster to litigate in several fora.  *Id.*

Neither prong is satisfied here.  First, Hurricane Katrina was not a "sudden accident" under the MMTJA.  "Accident" is generally defined as "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated."  BLACK'S LAW DICTIONARY 15 (8th ed. 2004).  As the plaintiffs point out, Katrina formed on August 23, 2005 and did not dissipate until August 31, 2005.[2]  The multi-day development of the storm and ubiquitous

_____

[2] *See 2005 Louisiana Hurricane Impact Atlas*, updated May 2006 by Joshua D. Kent, Data Manager, Louisiana Geographic

warnings of its approach in the days before its landfall contrast sharply with the types of mass accidents contemplated by Congress when it enacted the MMTJA, namely plane crashes, train wrecks, hotel fires, and environmental spills.  *See* 147 CONG. REC. H893-01 (2001); 137 CONG. REC. E1923-02 (1991).  The only reported case interpreting the MMTJA arose from a 2003 fire at a Rhode Island nightclub in which more than 100 patrons died, an incident that the district court, after an in-depth analysis of the MMTJA's legislative history, found qualified as a "sudden accident." *Passa v. Derderian*, 308 F.Supp.2d 43, 52-55 (D.R.I. 2004). Furthermore, a natural event cannot constitute a "sudden accident" because the MMTJA's definition goes on to define "accident" as also "a natural event culminating in an accident." 28 U.S.C. § 1369(c)(4).  Clearly a hurricane is a natural event.

Second, what damaged the plaintiffs' residences in these cases was not "a natural event culminating in an accident" under the MMTJA.  Although Katrina was certainly a natural event, it did not lead to any accident that caused the damage alleged by the plaintiffs here.  In their state court petitions, the plaintiffs specifically aver: "Plaintiffs' immovable property sustained loss or damage from hurricane-related *winds* which is a

---

Information Center, available at http://lagic.lsu.edu (last visited 10/4/06).

covered peril under the policy issued by Defendant." (No. 06-2570, R. Doc. 1-2, p. 2; No. 06-2997, R. Doc. 1-2, p.2) (emphasis added). Plaintiffs do not allege that any of their damages resulted from flooding caused by breached levees, which State Farm argues was the accident that arose from Hurricane Katrina and damaged plaintiffs' residence. Although State Farm urges the Court to take judicial notice of a website purportedly showing a *Times-Picayune* article reflecting ZIP codes subject to flooding from Hurricane Katrina, that material, even if subject to judicial notice, does not establish that plaintiffs' property was flooded at all, much less by water from breached levees. As nothing in the record ties plaintiffs' claims to levee breaches, whether those levee breaches were an "accident" as defined by the MMTJA is beside the point. The only cause of damage plaintiffs complain of is wind, which occurred as part of a natural event that affected many locations across Louisiana and the entire Gulf Coast.

Other courts in this district have unanimously rejected the argument that Hurricane Katrina was an accident under the MMTJA. *See, e.g., Berry v. Allstate Ins. Co.*, 2006 WL 2710588, *3 (E.D. La. Sept. 19, 2006) (Zainey, J.) ("Because Hurricane Katrina was not 'an accident' as that term is defined in the MMTJA, this Court does not have original jurisdiction under that Act.");

*Southall v. St. Paul Travelers Ins.* Co., 2006 WL 2385365, *5
(E.D. La. Aug. 16, 2006) (Barbier, J.) ("Contrary to Defendant's
assertion, this Court determines that it is anything but *clear*
that Hurricane Katrina was an 'accident' within the meaning of
the statute.  If anything, it is more *clear* that it was *not* an
accident within the meaning of the statute.") (emphasis in
original); *Flint v. Louisiana Farm Bureau Mut. Ins. Co.*, 2006 WL
2375593, *3 (E.D. La. Aug. 15, 2006) (Duval, J.) ("This Court has
determined that Hurricane Katrina has not been classified as a §
1369 'accident' by any court and therefore, this Court declines
to interpret the statutory definition of 'accident' so
broadly.").  State Farm however asserts that both the Fifth
Circuit and the Middle District of Louisiana have held that
Katrina constituted a statutory accident for the purposes of
federal jurisdiction under the MMTJA.  But State Farm
misconstrues these holdings.  In *Wallace v. Louisiana Citizens
Property Insurance Company*, 444 F.3d 697, the Fifth Circuit never
actually addressed whether Katrina was an accident under the
MMTJA.  Rather, the Court merely mentioned that the petitioners
in that case argued that Katrina constituted an "accident" under
the statute.  444 F.3d at 699.  In *Chehardy v. State Farm Fire &
Casualty Company, et al*, Civil Action Nos. 06-1672, 06-1673, 06-
1674, Judge Frank Polozola of the Middle District of Louisiana

10

noted in his order transferring the case to this district that
jurisdiction existed under 28 U.S.C. § 1369.  However, Judge
Duval, who received the case, concluded that "[Section] 1369
jurisdiction exists in *Chehardy* because the levee break is the
requisite accident that caused the death of at least 75 natural
persons at a discrete location."  *Flint*, 2006 WL 2375593, at *3.
As noted earlier, there is no evidence plaintiffs' claims arise
from a levee breach.  Therefore, 28 U.S.C. § 1369 does not give
this Court subject matter jurisdiction over these cases.

     Removal of these cases is also improper under 28 U.S.C. §
1441(e)(1)(b).  As discussed earlier, § 1441(e)(1)(b) permits
removal when the defendant is a party to another action that is
or could have been brought under § 1369 in a federal district
court and arises from the same accident as the action in state
court.  State Farm's argument fails because the state court cases
it seeks to remove did not arise from an accident, which is a
necessary condition for Section 1441(e)(1)(b) removal.  Removal
under 1441(e)(1)(b) is therefore improper.  For all of the
foregoing reasons, the MMTJA does not provide for removal of
these actions to federal court.

   **B.   06-2994: St. Ann's Convalescent Home v. D.H. Reeves et
         al**

     Plaintiff St. Ann's Convalescent Home, which is located in
St. Bernard Parish, alleges that it sustained wind and flood

damage as a result of Hurricane Katrina that rendered its
facility a total loss.  Plaintiff avers in its state court
petition that the majority of the damage was "flood damage."  (R.
Doc. 1-4, p. 2).  Before Katrina, plaintiff had procured a
commercial property insurance policy from Mt. Hawley Insurance
Company, a foreign insurer with neither citizenship nor a
principal place of business in Louisiana.  The policy provided
for structural coverage up to a maximum amount of $3,441,123.
(Id. at 3).  Plaintiff also purchased a flood insurance policy
through its broker, D.H. Reeves, a corporation with its domicile
and principal place of business in Louisiana.  That policy
provided up to $500,000 in coverage for flood damage.  (Id. at
2).  Plaintiff states that with only $500,000 in flood coverage,
it would be unable to recover for the remaining value of the
damage to its structure, which is almost $3,000,000.  Plaintiff
makes two separate claims in its state court petition.  First,
plaintiff asserts that D.H. Reeves had a duty to advise it of the
availability of excess flood insurance, and to recommend that it
insure the structure against flood damage up to its full
appraised value.  (Id.).  Second, plaintiff separately alleges
that it is owed the full value of its commercial property under
La. Rev. Stat. § 22:695 from Mt. Hawley.  Defendants removed this
action to this Court, asserting diversity jurisdiction under 28

U.S.C. § 1332 because D.H. Reeves was improperly joined or, in the alternative, jurisdiction under 28 U.S.C. § 1369, otherwise known as the MMTJA, discussed *supra*, which requires only minimal diversity.

The Court first examines whether jurisdiction is proper under § 1332.[3]  If so, it will be unnecessary to determine whether jurisdiction under the MMTJA exists.  Defendants assert that D.H. Reeves was improperly joined as a defendant.  When a nondiverse party is properly joined as a defendant, a defendant may not remove under section 1332.  However, a defendant may remove by showing that the nondiverse party was improperly joined.  *Smallwood v. Il. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).  Because the doctrine is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one.  *Id.*  Improper joinder may be established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant.[4]  *Ross v. Citifinancial, Inc.*,

_____

[3] All parties agree that the amount in controversy is greater than $75,000.  Thus, if complete diversity exists, this Court would have jurisdiction over the action under § 1332.

[4] The Fifth Circuit now officially refers to "fraudulent joinder" as "improper joinder."  *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005).  However, the term "fraudulent joinder" is still used in many Fifth Circuit cases, causing no shortage of confusion.

344 F.3d 458, 461 (5th Cir. 2003).  In *Ross*, the Fifth Circuit clarified the standard for finding improper joinder when a defendant alleges that plaintiff is unable to state a claim against the nondiverse defendant.  *Id*. at 462-63.

The Court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability on the nondiverse defendant.  *Id. (citing Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).  This means that there must be a reasonable possibility of recovery, not merely a theoretical one.  *Id.*  The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id.*  The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6), because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim.  *Id. (citing Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003); *see also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004).  In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff."  *Travis*, 326 F.3d at 649.  In addition, the Court

must resolve all ambiguities of state law in favor of the nonremoving party. *Id*.

Defendants assert that D.H. Reeves was improperly joined as a defendant in this lawsuit for two reasons: (1) St. Ann's claims against D.H. Reeves are perempted under La. Rev. Stat. § 9:5606 and (2) those claims are completely unrelated to the claims against Mt. Hawley.  Joinder of D.H. Reeves was improper if the Court finds in the defendants' favor on either of these grounds. The Court now addresses each of the defendants' arguments in turn.

Defendants contend that any claim against D.H. Reeves is perempted under La. Rev. Stat. § 9:5606, which states in part:

> No action for damages action any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.[5]

---

[5] Under Louisiana law, "Peremption is a period of time fixed by law for the existence of a right.  Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."  La. Civ. Code art. 3458.

La. Rev. Stat. § 9:5606(A).  Defendants allege that any relevant acts in this case took place no later than July 2002, when D.H. Reeves became St. Ann's agent of record on the flood policy.  (R. Doc. 1-4, at 7).  They assert that any actions thereafter were merely renewals of the policy without significant changes or substantive communications between D.H. Reeves and St. Ann's. (Id.).  They therefore contend that this case is governed by the principle that subsequent renewals of insurance policies do not restart the peremptive period for acts or omissions committed at the time of initial purchase.  *See Biggers v. Allstate Ins. Co.*, 886 So.2d 1179, 1182-83 (La. Ct. App. 2004); *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So.2d 377, 382-83 (La. Ct. App. 2003; *see also Bordelon v. The Indep. Order of Foresters*, 2005 WL 3543815, at *3 (E.D. La. Oct. 4, 2005).  As St. Ann's did not commence this action in state court until April 27, 2006, defendants assert that the three-year limitation bars plaintiff's claims against D.H. Reeves.

As discussed above, this Court must determine "whether there is arguably a reasonable basis for predicting that state law might impose liability." *Ross*, 344 F.3d at 462.  The Court begins with a Rule 12(b)(6) type-analysis, "looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state

16

defendant." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).  St. Ann's alleges in its complaint that D.H. Reeves failed to recommend excess flood insurance to cover the full appraised value of its structure even though such insurance was available in the marketplace.  (R. Doc. 1-4, at 2).  However, St. Ann's does not identify the precise dates on which this alleged conduct took place.  The Court therefore cannot determine from the face of the pleadings that peremption forecloses plaintiff from having an arguably reasonable basis for recovery.  In this event, the Court may "pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.

The parties submit conflicting affidavits on the issue of the nature of the dealings between them at the relevant times. Anthony Mendoza, president of St. Ann's, states in his affidavit that St. Ann's purchased a new flood insurance policy from D.H. Reeves in July 2003, and renewed that policy in July of 2004 and 2005.  (R. Doc. 7-3, at 2).  He alleges that at the purchase and at each renewal he received advice on coverage from Reeves that was the basis for his decision to agree to only $500,000 in coverage under the NFIP program.  He avers: "On each occasion I as Huntington's President selected and agreed to the maximum $500,000 in commercial structure coverage under the National Flood Insurance Program on [defendants'] advice."  (Id.).

17

Mendoza alleges that Reeves represented to him that $500,000 NFIP coverage was the maximum available, which was not true in light of the availability of excess flood insurance coverage.  Mendoza asserts that had he known or been advised that excess flood insurance coverage was available on any occasion, St. Ann's would have purchased such insurance to cover the full $3,441,123 value of its structure.  On the plaintiff's allegations then, this is not a situation in which the policy was simply renewed without any substantive undertaking and communications between the parties.  Defendants, on the other hand, contend that agent Deborah Dilliard first procured $500,000 in commercial structure coverage under the National Flood Insurance Program for St. Ann's in 1999, when she worked for another broker.  In her affidavit, Dilliard avers, "Each year thereafter, including July 2002 when Reeves became agent of record, the flood policy was renewed with the same limits, without discussion of the structural limit amount."  (R. Doc. 1-4, at 7).  She further states that "since setting the $500,000 structural limit on the flood policy, no representative of Reeves has discussed the amount of the structural limit with any representative of plaintiff."  (Id.).

The purpose of the Court's summary inquiry, in which it pierces the pleadings, is "only to identify the presence of discrete and undisputed facts that would preclude [plaintiffs']

recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74.  As the Fifth Circuit re-emphasized in *Burden*, on motions such as this one, the Court must resolve all disputed questions of fact in the plaintiffs' favor:

> Lest there remain even a shadow of a doubt as to this circuit's position, we reiterate – in hopes that further pronouncement will not be necessary – that in testing for fraudulent joinder the district court in its discretion may 'pierce the pleadings,' albeit in so doing the court should not conduct an evidentiary hearing but, based on appropriate documentation in addition to the pleadings, *should instead resolve all disputed questions of fact in favor of the plaintiff.*

60 F.3d at 217 (emphasis added). As the competing affidavits show the existence of a factual dispute regarding whether D.H. Reeves' act, omission, or neglect took place within the one-year/three-year peremptive period, the Court must resolve the issue in plaintiff's favor.  The Court thus concludes that there is an arguably reasonable basis to find that state law might hold that plaintiff's claims are not perempted.  Joinder of D.H. Reeves was not improper on this ground.

In the alternative, defendants assert that D.H. Reeves is improperly joined because St. Ann's claims against D.H. Reeves are unrelated to their claims against Mt. Hawley.  Defendants rely on the Eleventh Circuit's decision in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), which found that when a diverse defendant is joined with a nondiverse

19

defendant as to whom there is no joint, several or alternative
liability and when the claim against the diverse defendant has no
real connection to the claim against the nondiverse defendant,
this can serve as a third situation of fraudulent joinder in
addition to the two identified in *Smallwood*. *See Triggs v. John
Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)
(summarizing the holding in *Tapscott*).  The Fifth Circuit appears
to have adopted *Tapscott*'s fraudulent joinder principle in *In re
Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002).  Even so, the
plaintiff's claims against its insurance provider and agent are
not improperly joined.  St. Ann's claims each arise from what it
alleges was a lack of coverage for the damages its structure
sustained in the aftermath of Katrina, satisfying the requirement
for joinder under Fed. R. Civ. P. 20.  (Rule 20(a) states in
pertinent part: "All persons . . . may be joined in one action as
defendants if there is asserted against jointly, severally, or in
the alternative, any right to relief in respect of or arising out
of the same transaction, occurrence, or series of transactions or
occurrences and if any question of law or fact common to all
defendants will arise in the action.")  In similar factual
contexts, courts in this district have found a "palpable
connection" between claims against an insurance company and an
insurance agent, such that the claims were not fraudulently

joined.  *See Radlauer v. Great N. Ins. Co.*, No. 06-1737, 2006 WL 1560791, at *5-6 (E.D. La. May 16, 2006) (Zainey, J.); *see also Richmond v. Chubb Group of Ins. Cos.*, No. 06-3973, 2006 WL 2710566, at *6 (E.D. La. Sept. 20, 2006) (Africk, J.); *Schwartz v. Chubb & Sons, Inc.*, No. 05-6885, 2006 WL 980673, at *5 (E.D. La. Apr. 11, 2006) (Fitzwater, J.[6]).  The Court thus concludes that there is no improper joinder on this ground.  Complete diversity is therefore lacking.

However, defendants' removal still may be proper under the MMTJA, which requires only the presence of minimal diversity to confer federal jurisdiction over applicable claims.  Minimal diversity is satisfied here under § 1369(a) because Mt. Hawley is a resident of Illinois and plaintiff is a resident of Louisiana. Defendants assert that this action arises from Hurricane Katrina, which constitutes an "accident" under § 1369.  As discussed earlier, courts in this district, including now this one, have consistently held that Hurricane Katrina is not an "accident" as that term is defined by the MMTJA.  *See, e.g., Berry v. Allstate Ins. Co.*, 2006 WL 2710588, *3 (E.D. La. Sept. 19, 2006) (Zainey, J.) ("Because Hurricane Katrina was not 'an accident' as that term is defined in the MMTJA, this Court does not have original

---

[6] Judge Fitzwater sat by designation due to the recusal of Judge Schwartz's colleagues in the Eastern District.  2006 WL 980673, at *1.

jurisdiction under that Act."); *Southall v. St. Paul Travelers Ins.* Co., 2006 WL 2385365, *5 (E.D. La. Aug. 16, 2006) (Barbier, J.) ("Contrary to Defendant's assertion, this Court determines that it is anything but *clear* that Hurricane Katrina was an 'accident' within the meaning of the statute.  If anything, it is more *clear* that it was *not* an accident within the meaning of the statute.") (emphasis in original); *Flint v. Louisiana Farm Bureau Mut. Ins. Co.*, 2006 WL 2375593, *3 (E.D. La. Aug. 15, 2006) (Duval, J.) ("This Court has determined that Hurricane Katrina has not been classified as a § 1369 'accident' by any court and therefore, this Court declines to interpret the statutory definition of 'accident' so broadly.").  The facts in this case provide no reason to stray from this district's reasoned analysis.  St. Ann's is located in St. Bernard Parish.  Defendants have offered no evidence that any single accident in that parish resulted in the death of at least 75 persons in a discrete location.  Absent such an occurrence, the Court does not find that the wind and flood damage incurred by St. Ann's as a result of Katrina was caused by the type of accident contemplated by the MMTJA.  Thus, this Court does not have subject matter jurisdiction over this case under § 1369.

Finally, St. Ann's also moves under 28 U.S.C. § 1447(c) for an award of attorney's fees and costs for defendants' improper

removal.  The decision whether to award attorney's fees and/or costs is discretionary.  *See Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."  *Martin v. Franklin Capital Corp.*, --- U.S. ----, 126 S.Ct. 704, 711, 163 L.Ed.2d 547 (2005) (citing *Hornbuckle*, 385 F.3d at 541; *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)).  Because the Court does not find the removal in this case objectively unreasonable, the Court exercises its discretion not to grant plaintiff's request for attorney's fees and costs.


IV.  **CONCLUSION**

     For the foregoing reasons, the Court GRANTS plaintiffs' motions to remand in the above-listed cases.


     New Orleans, Louisiana, this  24th  day of October, 2006.


                    *Sarah Vance*
                    ─────────────────────────
                    SARAH S. VANCE
                    UNITED STATES DISTRICT COURT

                              23